UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua Harris, | Case No. 23-cv-170 (ECT/TNL) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| A.D.C. and Ramsey Court's, | |
| Defendants. | |

Joshua Harris, Ramsey County ADC, 425 Grove Street, St. Paul, MN 56302, pro se.[1]

This matter comes before the Court on Plaintiff Joshua Harris's (1) original complaint [ECF No. 1]; (2) motion to dismiss "all court cases" [ECF No. 2 ("Motion to Dismiss")]; (3) amended complaint [ECF No. 4 ("Amended Complaint")]; (4)–(6) three Applications to Proceed in District Court Without Prepaying Fees or Costs [ECF Nos. 5, 7, and 8 (the "IFP Applications")]; and (7) motion for a default judgment [ECF No. 12 ("Default-Judgment Motion")].  For the following reasons, the Court recommends dismissing this action and denying the Motion to Dismiss, IFP Applications, and Default-Judgment Motion as moot.

---

[1] "It is Plaintiff's responsibility to keep this Court properly apprised of his current address so that he may receive correspondence from this Court." *Jackson v. Brown*, No. 18-cv-2567 (WMW/LIB), 2020 WL 1236708, at *3 (D. Minn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 1236562 (D. Minn. Mar. 13, 2020); *see also Hogquist v. Anoka Cty. Dist. Courts*, No. 19-cv-2471 (WMW/KMM), 2019 WL 6874709, at *1 n.1 (D. Minn. Dec. 17, 2019) ("It is a petitioner's responsibility to provide updated contact information to ensure timely receipt of case-related communications.").  Recently, mail sent to the Ramsey County ADC address provided by Plaintiff was returned as undeliverable.  The Clerk of Court will be directed to mail this Report & Recommendation to Plaintiff's last known address.

## I.     BACKGROUND

Harris filed this action while detained at the Ramsey County Adult Detention Center ("ADC"). [*See, e.g.*, ECF No. 1-1.] He is currently the defendant in at least five pending criminal matters in Minnesota state court. [*See* ECF No. 2 at 1.] In three of these, he has pleaded guilty to at least one charge and awaits an apparently consolidated sentencing hearing in April 2023. [*See* Register of Actions, *State v. Harris*, No. 62-CR-20-1384 (Minn. Dist. Ct.) (indicating that Harris has pleaded guilty to one count of carrying a pistol without a permit); Register of Actions, *State v. Harris*, No. 62-CR-21-0852 (Minn. Dist. Ct.) (indicating that Harris has pleaded guilty to one count of domestic assault); Register of Actions, *State v. Harris*, No. 62-CR-21-3751 (Minn. Dist. Ct.) (indicating that Harris has pleaded guilty to one count of violating a domestic-abuse no-contact order).[2]]

This action commenced on January 23, 2023, when the Court received Harris's original complaint. [*See* Docket.] As relevant here, the complaint discussed four of Harris's criminal matters[3] and made certain claims about how authorities at the ADC addressed Harris's exposure to the Covid-19 virus.[4] [*See* ECF No. 1 at 1–2.] Alongside the complaint, Harris filed the Motion to Dismiss [ECF No. 2]. This asks the Court to dismiss Harris from all five of his noted Minnesota criminal matters, claiming that they reflect a

---

[2] The dockets in Harris's state matters are not attached to any filings in this action. As public court records, however, the Court can take judicial notice of them. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)); *Jones v. Ellison*, No. 22-CV-2144 (WMW/JFD), 2022 WL 18215879, at *1 n.2 (D. Minn. Dec. 8, 2022) (citing cases), *report and recommendation adopted*, 2023 WL 146269 (D. Minn. Jan. 10, 2023). Harris's two other state-court matters not listed here are *State v. Harris*, No. 62-CR-21-5315 (Minn. Dist. Ct.), and *State v. Harris*, No. 62-CR-22-0030 (Minn. Dist. Ct.).
[3] For whatever reason, the complaint does not mention No. 62-CR-22-0030.
[4] As discussed below, Harris later filed an amended complaint, one effect of which was to supersede the original complaint. The Court therefore discusses the original complaint only briefly.

2

case of "mistaken identity" because the middle name of those cases' defendant differs slightly from the middle name on Harris's birth certificate. [*Id.* at 1.]

On January 25, 2023, the Court received Harris's Amended Complaint. [*See* ECF No. 4 at 1.] It names two defendants: (1) "Ramsey County's A.D.C." and (2) "Ramsey County's District Court Judge Stephenson." [*Id.* at 4.] The document includes a variety of allegations.

- Harris suggests that there has been an error in the amount of bail at issue for his release from pretrial detention—he believes it is $5,000, while authorities apparently believe it is $23,000. [*See id.* at 1.] Harris claims that after four days in the ADC dealing with this discrepancy, he finally "demand[ed]" that the "improper bail be fix[ed]," leading him to be put into "the hole." [*Id.*]

- While kept in "the hole," Harris alleges, he was maced, tazed, and beaten by unspecified individuals. [*See id.* at 2.] Harris claims he was locked in his cell for extended periods of time without being let out. [*See id.*] He also complains that he received a sandwich-only diet that caused him to lose 20 to 25 pounds. [*See id.*]

- At some point, Harris asserts, he was forced to "walk around naked" from "floor to floor" and to an unspecified in-jail "hearing," and that out of hundreds of inmates, he alone lacked any shoes or socks. [*Id.*] (In a similar vein, he reports that officers at the ADC "parade[d] [him] around naked" and "made fun" of him. [*Id.*]) He says that he reported these conditions to a "judge at court" who said that someone would "check on" Harris, but this never happened. [*Id.*]

He claims that these conditions constitute "cruel and unusual punishment," so are constitutionally impermissible. [*Id.* at 3.] For relief, the Amended Complaint asks for $80 million in monetary compensation and seeks dismissal of his five state-court criminal matters. [*See id.*]

3

The Amended Complaint also contains a two-page document that the Court construes as an addendum. [*See* ECF No. 4-1.] This reasserts the Motion to Dismiss's mistaken-middle-name argument and names "Ramsey County's Courts" as an additional defendant. [*See id.* at 2.]

In January and February 2023, Harris sent the Court the IFP Applications.[5] [*See* ECF No. 5, 7, and 8.] Finally, on February 27, 2023, the Court received the Default-Judgment Motion, which asks the Court to impose a default judgment on this action's defendants. [*See* ECF No. 12.] The motion's basis, Harris claims, is that the defendants have failed to respond to his pleadings. [*See id*. at 1–2.]

## II.   ANALYSIS

### A.   Standards of Review

Under 28 U.S.C. § 1915A(a), district courts review any "complaint in a civil action in which a prisoner[6] seeks redress from a governmental entity or officer or employee of a governmental entity." In this review, a court is to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious,

---

[5] After receiving the first IFP Application, the Court entered an order requiring Harris to either (1) submit a "certified copy of [his] trust fund account statement (or institutional equivalent) . . . for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official"; or (2) pay this action's filing fee. [ECF No. 6 at 1.] After some back and forth, it appears that Harris eventually submitted the relevant information. [*See* ECF No. 10 (suggesting that Harris qualifies as a no-assets-and-no-means filer under 28 U.S.C. § 1915(b)(4)); *but see* ECF No. 6 in *Harris v. Ramsey's County's Court's*, No. 23-CV-0197 (JRT/JFD) (D. Minn.) (presenting contradictory information).] The Court need not pursue the matter further. As discussed below, the Court must screen this action under 28 U.S.C. § 1915A whether or not Harris is proceeding IFP under 28 U.S.C. § 1915. And the Court's decision to let this case proceed without requiring an initial partial filing fee does not affect Harris's ultimate obligation, under 28 U.S.C. § 1915(b)(1), to pay this action's full $350.00 filing fee. *See* note 9 *supra*. The Court therefore will treat Harris as a no-assets-and-no-means filer for present purposes.

[6] Harris commenced this action while detained awaiting state-court handling of various criminal matters—at that point, he was not in custody due to a state-court conviction. But under § 1915A's definition of "prisoner," one qualifies even if merely "incarcerated or detained" while "accused of" criminal-law violations. 28 U.S.C. § 1915A(c). So Harris is a "prisoner" for § 1915A purposes.

or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b). Addressing frivolity, the U.S. Supreme Court has stated that a case is frivolous "where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *Williams v. Hopkins*, 130 F.3d 333, 335 (8th Cir. 1997) (quoting *Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994)).

In reviewing whether a complaint states a claim for which a court can grant relief, a court must accept as true all of the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the complaint's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, the court may disregard legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A district court's assessment of whether a pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)). Courts should construe *pro se* complaints liberally, but such pleadings must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

In addition to its § 1915A responsibilities, a federal district court must ensure its own jurisdiction. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). Under Federal Rule of Civil

Procedure 12(h)(3), "[i]f [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[7] It is a plaintiff's burden to "allege in his pleading the facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" (citing cases, including *McNutt*)).

### B.     Effect of Amended Complaint

The first issue for the Court is assessing the interplay of Harris's two complaints. Harris specifically calls ECF No. 4 an "amended [complaint]." [ECF No. 4 at 1.] Under Federal Rule of Civil Procedure 15(a)(1), as relevant here, "[a] party may amend its pleading once *as a matter of course* within . . . 21 days after serving it." (Emphasis added.) Defendants have yet to be served here, so Harris submitted his amended pleading before Rule 15(a)(1)'s deadline, and he could thus amend "as a matter of course."

It is well established that "[g]enerally, 'an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect.'" *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019) (quoting *Tolen v. Ashcroft*, 377 F.3d 879, 882 n.2 (8th Cir. 2004)); *see also, e.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (making same point (citing *Karnes v. Poplar Bluff Transp. Co. (In re Atlas Van Lines, Inc.)*, 209 F.3d 1064, 1067 (8th Cir. 2000)). The Amended

---

[7] As with § 1915A, dismissal of parts of an action is permissible under Rule 12(h)(3). *See Cox v. Comm'r of Dep't of Hum. Servs.*, No. 19-CV-1956 (JRT/DTS), 2020 WL 1049114, at *4 (D. Minn. Jan. 31, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 1043711 (D. Minn. Mar. 3, 2020).

Complaint thus supersedes the original, so the Court need only focus on the Amended Complaint's allegations and claims.[8]

### C.   Claims in the Amended Complaint

The amended complaint, with its addendum, names three defendants: (1) "Ramsey County's A.D.C.," (2) "Judge Stephenson," identified as a district court judge in Ramsey County, Minnesota; and (3) "Ramsey County's Courts." The Court will address the claims against Judge Stephenson first, then turn to the claims against the ADC and Minnesota's state courts.

#### 1.   Claims Against "Judge Stephenson"

Harris's claims against Judge Stephenson cannot proceed here because of the doctrine of judicial immunity. As the U.S. Court of Appeals for the Eighth Circuit recently summarized the doctrine:

> Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. It is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. A judge is immune from suit . . . in all but two narrow sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Just. Network Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019) (citations omitted; cleaned up); *see also, e.g.*, *Edner v. Dietrich*, No. 22-CV-0070 (JRT/LIB), 2022 WL 981367, at *8 (D. Minn. Feb. 24, 2022) (citing cases, including *Justice Network Inc.*).

---

[8] Certain issues in the original complaint do not appear in the Amended Complaint, so those specific issues are now no longer before the Court here.

In this case, the Amended Complaint's allegations plainly concern judicial acts—at best, they seem to concern judicial determinations about appropriate amounts of detainee bail. *See, e.g.*, *Hamilton v. City of Hayti*, 948 F.3d 921, 926 (8th Cir. 2020) ("For judicial immunity to apply, the relevant inquiry is the nature and function of the act . . . ; we must look to the particular act's relation to a general function normally performed by a judge." (quoting *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (cleaned up)). And nothing in the Amended Complaint suggests that Judge Stephenson's alleged conduct was outside state-court jurisdiction. The Court thus concludes that any Amended Complaint claims against "Judge Stephenson" should be dismissed with prejudice based on judicial immunity.

### 2. Claims Against "Ramsey County A.D.C."

The Court next turns to Harris's claims against "Ramsey County's A.D.C." As a threshold point, Harris's claims against the ADC itself are nonstarters because jails and correctional facilities are not themselves suable entities. *See, e.g.*, *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (citing cases); *Heiderscheid v. Dakota Cnty. Sheriff Off.*, No. 18-CV-1180 (JNE/LIB), 2020 WL 5128147, at *7 (D. Minn. July 22, 2020) (same), *report and recommendation adopted*, 2020 WL 5106816 (D. Minn. Aug. 31, 2020), *aff'd*, No. 20-3901, 848 F. App'x 678 (8th Cir. 2021). At best, then, Harris's claims against the ADC reflect an attempt to sue Ramsey County itself.

But even if one construes Harris's purported claims against the ADC as claims against Ramsey County, the Amended Complaint fails to state a claim. Harris does not specify the federal law under which he purports to bring his claims. He does suggest that he means to bring claims under the U.S. Constitution. [*See* ECF No. 4 at 3 (referring to

8

"cruel and unusual punishment"); *id.* at 2 (suggesting claim based on unconstitutional use of excessive force).] To the extent a plaintiff seeks to press claims under the U.S. Constitution, he or she cannot sue under the Constitution directly. Instead, the typical vehicle for constitutional claims against individuals acting under color of state law is 42 U.S.C. § 1983. *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (citing cases)); *cf. Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States.").[9]

The fact that Harris must proceed under § 1983 matters because of limitations on § 1983 claims against governmental entities. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (discussing differences between individual-capacity claims and official-capacity claims); *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (same (citing *Hafer*)). Harris's claims here against Ramsey County are so-called official-capacity claims. This matters because, "under § 1983, local governments are responsible only for 'their own illegal acts'"; they "are not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting and citing *Pembaur v. Cincinnati*, 475 U.S.

---

[9] Numerous courts in this District have cited *Azul-Pacifico* on this point. *See, e.g.*, *Fredin v. Olson*, No. 18-CV-2911 (SRN/HB), 2018 WL 6606249, at *1 (D. Minn. Oct. 29, 2018), *report and recommendation adopted*, No. 18-CV-2911 (SRN/HB), 2019 WL 1077173 (D. Minn. Mar. 7, 2019); *Franco v. Minnesota*, No. 12-CV- 1706 (ADM/JJG), 2013 WL 2556510, at *5 (D. Minn. June 11, 2013); *Sanvee v. Hennepin Cnty. Hum. Servs.*, No. 10-CV-0527 (RHK/JSM), 2012 WL 4128388, at *14 (D. Minn. Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 4120507 (D. Minn. Sept. 19, 2012), *aff'd*, No. 14-3106, 598 F. App'x 475 (8th Cir. 2015).

469, 479 (1986) (emphasis in *Connick*)); *see also, e.g.*, *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). For a government itself to deprive someone of his or her constitutional rights, "action pursuant to official municipal policy" must have caused the plaintiff's injury. *Connick*, 563 U.S. at 60 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *id.* at 61 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (citing cases)); *see also, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (making same points (citing cases)).

While there a number of ways to allege the relevant sort of "policy," *see, e.g.*, *Brewington*, 902 F.3d at 800–02 (discussing standards), the Court need not dive into that analysis here because the Amended Complaint does not refer to any sort of policy or custom at all. This means that the Amended Complaint fails to state any official-capacity claim against Ramsey County. As a result, the Court recommends dismissing the Amended Complaint without prejudice to the extent it proposes claims against "Ramsey County's A.D.C."

### 3. Claims Against "Ramsey County's Courts"

This leaves the Amended Complaint's claims against "Ramsey County's Courts." These claims fail under the U.S. Constitution's Eleventh Amendment. Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The Amendment uses the phrase "another State," but the Supreme Court has made clear that unconsenting States are also

immune from their own citizens' federal suits. *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Lors v. Dean*, 746 F.3d 857, 862 (8th Cir. 2014) (same). The point goes to jurisdiction: Eleventh Amendment sovereign immunity generally deprives federal courts of subject-matter jurisdiction over claims against an unconsenting state. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)); *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (citing cases).[10]

Of course, Harris does not name the State of Minnesota here. But the Ramsey County District Court, and more specifically the Second Judicial District, is part of the Minnesota court system. *See* Minn. Const. art. VI (making state's judicial branch part of state); Minn. Stat. § 43A.02, subd. 25; id. § 480.181, subd. 1. This makes it part of the State of Minnesota, and so the Ramsey County District Court is subject to state sovereign immunity "from suits for any kind of relief." *See, e.g.*, *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Kaisamba-Kanneh v. Dakota Cnty. Dist. Ct.*, No. 22-CV-2661 (ECT/TNL), 2023 WL 1451561, at *3 (D. Minn. Feb. 1, 2023) (making same point (citing cases)). The Court therefore recommends dismissing the claims against "Ramsey County's Courts" without prejudice for lack of jurisdiction.

---

[10] Nothing in the Complaint indicates that the State of Minnesota has consented to suits like Harris's. Indeed, to the extent that Harris brings any claims against "Ramsey County's Courts" under 42 U.S.C. § 1983, the Supreme Court has noted that § 1983 suits fall within Eleventh Amendment sovereign immunity. *See Sossaman*, 563 U.S. at 284–85, 291–92; *see also, e.g.*, *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) ("[C]learly Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become [§] 1983." (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

### D. Remaining Matters

Under the discussion above, the Court recommends dismissing this action in its entirety. The Court thus further recommends denying as moot the Motion to Dismiss, the IFP Applications, and the Default-Judgment Motion.

Notwithstanding the dismissal of this action, Harris shall remain liable for the unpaid balance of the $350 filing fee.[11] To date, Harris has not paid any fee at all, so he still owes the full $350 fee. Prison officials will have to deduct that amount from Harris's prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Based on this Court's review under 28 U.S.C. § 1915A and Federal Rule of Civil Procedure 12(h)(3), Plaintiff Joshua Harris's Amended Complaint [ECF No. 4] should be **DISMISSED** with prejudice as to its claims against Defendant "Judge Stephenson" and otherwise **DISMISSED** without prejudice.

2. Harris's motion to dismiss "all court cases" [ECF No. 2], Applications to Proceed in District Court Without Prepaying Fees or Costs [ECF Nos. 5, 7, and 8], and motion for a default judgment [ECF No. 12] be **DENIED** as moot.

3. Harris be required to pay the unpaid balance—here, $350.00—of this action's statutory filing fee in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court be required to provide notice of

---

[11] Under the Prison Litigation Reform Act, prisoners may be excused from prepaying the full amount of the applicable filing fee before filing an action. But 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." That is, prisoners can file actions without paying the full filing fee in advance, but they still remain liable for the fee. *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir.1998). Nothing in the PLRA suggests that the dismissal of a prisoner's action extinguishes the ultimate obligation to pay the filing fee. *See, e.g.*, *In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

this requirement to authorities at the institution where Harris is confined.

Dated: April  25 , 2023                                     *s/ Tony N. Leung*
                                                            Tony N. Leung
                                                            United States Magistrate Judge
                                                            District of Minnesota


*Harris v. A.D.C. et al.*
Case No. 23-cv-170 (ECT/TNL)


# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).